Your Honor, on March the 21st, 2020, the City of Columbus adopted an ordinance for the purpose of preventing the spread of COVID, but it selected only a very minuscule number of businesses to be closed, and only businesses which were tiny in themselves, I doubt if any of the businesses they closed had ten employees. And bars, they did close bars. Bars in Columbus, Mississippi are tiny, one or two over there. Almost everything else could stay open. They had some things they restricted, but almost all other businesses could stay open. The heart of what we're arguing to the Court is that their actions violated the Equal Protection Clause of the Fourteenth Amendment and violated the Takings Clause of the Fifth Amendment. Your Honor, regarding the Equal Protection violation, Your Honor, of course, well knows that a standard of strict scrutiny applies if what the government does infringes upon a fundamental right, a fundamental constitutional right. There's a lot of debate in the brief about this lower court has said this or that or the other about whether a right to earn a living or a right to engage in a common occupation is a fundamental right. But the United States Supreme Court has repeatedly said that it is, over and over again. A case that has readily come to mind is Board of Regents Lee Roth. You know, the United States Supreme Court says it's fit to talk about what is a liberty interest within the meaning of the Fourteenth Amendment, and they have just frequently said that the right to engage in the common occupations of life or to earn a living is a liberty right. And I suggest to the Court, Your Honor, that it's not the place of the lower courts to go back and say, well, we think this is not what the Supreme Court meant or this is dictum or this is outdated or anything of that sort. The United States Supreme Court has said that, and so for that at this point, it shouldn't be disputed. That is a fundamental right to earn a living, and they therefore must show some compelling interest in closing this business while leaving virtually everything else open, some compelling state interest. Their brief, as I told Cal, is extremely well done, cited every case imaginable, but they have not argued that this would meet that standard. They have never said that they could show fulfillment of a state interest. There's no such argument in their brief, and as I say, it's very well done. And they can't say that because the testimony is undisputed that they could operate this tanning salon within the CDC guidelines. We could operate it with having one clerk on duty at a time. We could have less than ten customers. We could have one customer. We could do whatever you said. We could operate this business. So we believe that it's not a rational basis test, that the case should be decided on the basis that the United States Supreme Court has said the right to earn a living, operate your own business, is a fundamental right, and that they have not shown a compelling interest for infringing upon that fundamental right. Your Honor, regarding the Fifth Amendment takings claim, I would be the first to say, at least confusing to me, there are a lot of United States Supreme Court cases in this area, and they are sometimes hard to reconcile. But when the United States Supreme Court decided Cedar Point Nursery be a seed, 141 S. Court 2063, that is the most recent case, and to me, it is the most directly on point case. What happened in that case, Your Honor, was that a business was told or instructed by a government entity that they had to allow labor union organizers on their property. And the argument was made is that that's just a regulation, that's not a taking, and there's no violation of the Fifth Amendment. The United States Supreme Court held that the right to exclude people from your property, that is an incident of ownership, you own the property and you have the right to exclude people from your property. You don't have to allow those, or if the government makes you allow union organizers on your property, you get to pay just compensation. But how is Cedar Point directly, you said that's the most directly on point case, nobody was required or compelled to come onto the property here. You're trying to read Cedar Point in the converse, right? Because the government kept people away from the property. Your Honor, I said it was a converse, but it has the same principle. If it's an incident of ownership, that you have the right as the owner to determine who goes on your property. It's also an incident of ownership that you have the right to invite people onto your property. If I own a business, I have a property there, a leased property that I have and I'm operating as a tanning business, it's an incident of ownership of my business that I can invite customers to come onto the property. I think as an original matter, you make a valid point that there are, you know, what's the bundle of property rights that we all learn about in law school, the right to exclude, the right to alienate, the right to use, etc., etc. I take that point completely. The problem that you run into is that the Supreme Court doesn't operate like this, right? The Supreme Court has seen fit to be very vigorous about enforcing the right to exclude, see Pruneyard and Cedar Point and that sort of thing, but it does not do that with respect to use, right? The government regulates all kinds of stuff, how you use your property, and we don't consider any of those things first aid takings. Your Honor, I'm sympathetic that the law seems illogical, but we're bound by that, aren't we? Your Honor might be aware of some case that, you know, that would be like this case where the government directs you that you don't have the right anymore to determine who comes onto your property. You don't have that right, but to me, that just naturally follows. I'm not trying to be argumentative with the Court. No, no, no. Your point is, if I understand it, if you have the right to exclude, like in Cedar Point, then you should have the right to invite. It's an issue of ownership. I mean, if I own property, if I own my law office, if I have the right ... What's your best case, though, that the right to ... The way I think about it is you've got the right to exclude, which is pretty aggressively protected, and then you have regulations about just the right to use your property, which, as you know, is very minimally regulated undertakings. What's your best case that the right to invite fits more like use, I'm sorry, fits more like exclude rather than like use? Your Honor, I can't cite a case that would be of help to the Court. All I can say is if you're telling people that your business is closed, you can't allow people to come onto your property for tanning purposes. If that's what you're telling them, then you have taken the property. It's gone far beyond the regulation of property. You're telling them you can't ... There's no ... But you know there are a lot of cases out there about how, look, we're not saying you can't use your property at all. We just ... You just can't use your property for X, Y, and Z. Well, here's ... X, Y, and Z could have made given this ordinance because when they adopted the ordinance, there's no limit on the time. It's closed as of this date. They don't know how long it's going to be closed. So how is it? How is it? Hypothetically, I'm not saying this is great for your client, but hypothetically, they could have changed the business to fit within one of the essential businesses. To what? To what business, Your Honor? Any number of the businesses that were allowed. I get that as a practical matter. That is a ridiculous thing to say. My point is this is the Supreme Court precedent that we're handed. Well, if you can't ... I've tried to think of what business I could put in there. I'm a very poor businessman. I give examples. But regardless, I can't imagine what business ... You've got these expensive tanning beds in there. So what business could you have changed? As a practical matter, they've stopped their right to use the property. As a practical matter, that's what they've done. You could start doing photography in the tanning containers. Well, Your Honor, I'm just saying realistically. I just don't ... I don't believe there's any use they could have made of the property. I mean, yes. It's ... The alternatives are ludicrous. And all I'm suggesting is that the most recent Supreme Court case is the best guidance. I mean, it's not ... I understand ... These people were saying that the right to exclude ... Yeah. Maybe you say right to exclude, right to invite. What's the difference? It'd be nice to see some of that. Yeah. I mean, there's a lot of analysis about ... That would carry that doctor in that way. Otherwise, it seems more like a standard regulation. Can we go back to your first point? Your key point about the fundamental right to earn a living. Yes, sir. I don't think I heard the case you cited. Was it Trough versus Reich? There were several. Yes, there's several. That's one. That's one. They say it in various contexts. In that case, I think they had a regulation that had to have a certain percentage of American workers as opposed to Indians, I think. But I'm sure you know, that's based on an era that the court no longer seems fond of. That's quite debatable. This is not really ... This is not like those old 1930s cases where they're regulating a business and how it treats workers. That's not exactly what this is. No, but it's part of that tradition of ... Back then, there was an understanding that, although there's no express right to various economic liberties, the court was quite comfortable enforcing them rigorously. We're not in that world. We haven't been in that world for a long time. I mean, Mr. Wade does cite cases from the 70s and 80s that say that there's liberty interest to pursue the common occupations of life. Yes. What I'm saying, Your Honor, may have not been directed before the court. But for example, in the Roth case, that's a 72 case. And the Supreme Court is just setting out for the benefit of litigants or citizens, what is a liberty right? I apologize. Which case? I apologize. It's Board of Regents v. Roth, R-O-T-H. It may not be cited in my brief, but it's a pretty case I frequently see. It's a 72 case, and they just set out what they've set out back in the 19th century, that the right to engage in the common occupations of life is a fundamental- I don't think you did cite it. Sir? I don't think you did cite it. I don't believe I did. I'll send a court letter. It was a due process case. Your Honor, that petition for cert, I know that's not normal to be citing petitions for cert, but I sent the court a Rule 28J letter citing a petition for cert, and it is very comprehensive on all the case law going back on where that's been recognized. It's in my 28J letter, and it also discusses in a lot of detail the disparity in the court decisions about what rational basis means, so it's also significant for that purpose. But I really hope Your Honor will take a look at that. It's one of those cases that the SCOTUS blog says is most- I don't know whatever that's worth, but they say it's most likely the Supreme Court's going to hear. Let me ask you, Mr. Wade, suppose you were to prevail in this lawsuit, what would your client get? He'd get the lost income for the- Lost income or lost profit? Well, that would be a question we'd have to argue below, but we would say trying to establish lost profit in any case is going to be difficult, but it's not a large amount of income. He testified he lost $40,000 in gross income on cross-examinations. She started talking about the loans you got and things, and you really only lost $20,000 or whatever, and at one point she argued you really didn't lose anything, but that's a fact question for a jury to determine as to what the loss was, and I think, Your Honor, the Fifth Circuit has said that the fact that the loss is not much or whatever is not a defense to a Fifth Amendment takings case. There's a case in there where the Supreme Court took an example. If you shot one round, if a military installation shot one round across the field of a farmer or whatever, that would be a taking of servitude. It'd just be the extent of it, so the fact that there may be a minimal loss is not a defense. Well, I mean, did the client get, just for the sake of argument, did the client get PPP money? Yes, ma'am, and they emphasize that a lot. Of course, everybody got it. I got it. You didn't have to have your business closed to get it. I didn't, but... In business, and you had employees. They had to miss payroll until they got the PPP money, and that's in the record, and they used it. He carefully explained he used it exactly for payroll, but everybody got it. You didn't have to have your business closed to get it. All righty. If there's nothing else, that's all I have to open you up. I was going to say, that's fine. Thank you. Thank you. Okay, Mr. Chase. Ma'am, Police and Court. Michael Chase for the City of Columbus. Addressing the Equal Protection claim, the plaintiff is confusing general liberty interest in employment or operating a business, which no one disputes, with a fundamental right. Now, there are many liberty interests, and few, though, are fundamental, and the court has clearly stated, and as we cited in our brief case, holding that there's never been a Supreme Court has never said that the right to work or the right to operate a business is fundamental in the sense of demanding strict scrutiny. In fact, this court's case in Pollard v. Cockrell said plainly there is no fundamental right to pursue a legitimate business, and that the suggestion that there is such a right is derived solely from substantive due process cases such as Truax, which have been either discredited or overruled. Well, I like to think Meyer v. Nebraska is still good law. It's still good law, but it recognized only that there is a liberty interest. In other words, the argument, I think, originally was when the 14th Amendment said liberty shall not be deprived without due process, that was the liberty of not being locked up, and what these cases say is the liberty is broader than that. It extends to things like the right to work, the right to operate a business, so there's no question that that's a liberty interest, but the courts have said it's not fundamental. If the government impinges on a liberty interest in work or operating a business, it's subject to rational basis scrutiny. It's not subject to strict scrutiny, and that's all the cases. None of the cases that the plaintiff cites as following the Truax line from the 70s or 80s or whatever, none of them applied strict scrutiny. It was all rational basis. They simply held that this was a liberty interest, and therefore it was subject to the 14th Amendment, and therefore the government had to show at least there was some rational basis to support its enactment. So the Takings case, again, is... I do wonder, though, before you get to Takings, on the fundamental rights issue, we are in a time of flux in this area of law. I'm thinking about the Dobbs case, where on the one hand, abortion is not in the text of the Constitution, so that's now been overturned, but the Supreme Court also reaffirmed the notion that there can be unenumerated rights that are important to the history and tradition of the country. Isn't there a good argument that the basic right to earn a living is as fundamental as one can imagine in light of the history and traditions of our nation? No, the Supreme Court has disagreed. All the courts have disagreed. No, I hear you that the precedents are all against it. I guess I'm wondering, is that where the Supreme Court's going to go in the future? I think that it's... I realize we're bound, obviously. Everything is subject to reasonable restrictions, and this is no more fundamental than many other things that are would consider... Well, I don't know. When you shut down a business and you order your clothes indefinitely, that's pretty dramatic. It is, definitely, and so that's why we say that the government has to have a legitimate reason, a rational reason, for doing that, but to go beyond that and say that there has to be strict scrutiny and there has to serve a compelling interest is just taking it too far. I understand the argument, and I'm sympathetic to the right to work and the right to operate a business, but we're stuck... Do you acknowledge that there are rights, even under current Supreme Court precedent, there are rights that are deemed fundamental even though they're not in the text? Yes. And so I take it what we're supposed to do under Luxburg and Dobbs is to look at history and tradition. I assume you agree with that? Right, and to look at Supreme Court precedent, which says that the right to work, the right to operate a business, is not fundamental... Believe me, I get that the Supreme Court precedent is strongly on your side on this claim and perhaps on the other claim. I guess what I'm wondering, though, is is that correct? Well, that's part of history and tradition that has never been considered to be that... You're saying there is no history and tradition in our country at the time of our founding that people have the right to earn a living? Yes, and that's why... They have the right to travel interstate, but they don't have the right to earn a living to pay for that travel. That's right. That's why it was recognized as important. That's why the court said it's within the liberty protected by the 14th Amendment, but it's not fundamental in the sense that... And you can put the label fundamental or whatever, but it's not of the height or importance that it's subject to strict scrutiny. Because if that were the case, every economic regulation would be subject to strict scrutiny. There could be no economic regulation because every economic regulation would be dragged before the court to prove that this is... And the burden would then be on the government because it's strict scrutiny to prove this, whereas here it's the burden is on the plaintiff to show that there's no rational basis for this restriction. So if you say, well, you can't operate this particular type of business, go operate some other kind of business. The suggestion is that that could not possibly ever be a law that a jurisdiction would adopt. I'm not sure I agree with you. I can imagine communities wanting that rule. I don't think it's a crazy rule. I'm sorry. I'm misunderstood. I think you were suggesting that it would just be insane to live under a regime where economic liberty were treated as fundamental. No, no. Let's say Texas decided... Okay. All right. Maybe I misunderstood, but if Texas were to pass a state constitutional amendment to say in the state of Texas or in the state of Louisiana, where we are now, we have a fundamental right to earn a living and subject to strict scrutiny type doctrine, then we would apply that doctrine. And I guess what I'm asking is, if the Supreme Court is telling us in Glucksburg and Dobbs and whatnot, that we can enforce rights that are unenumerated, but only if they're consistent with the history and tradition of our country, why isn't the freedom to earn a living about as paramount a fundamental liberty as one can imagine? Well, I don't think... I'm not saying it's unprecedented. I'm not saying it's current law. You're almost certainly right. It's not current law, but why is that not the direction that the Supreme Court might someday want to go in? I can't predict. Well, we do have the Fifth Circuit casket case where Louisiana... And it just occurred to me, I'm sorry, I should have reviewed it before I popped off, but where Judge Higginbotham's panel said that Louisiana could not ban this group of monks from making pine caskets, and I think they said... They probably said that was arbitrary and capricious. They did. Okay. Because the whole point was limiting... Only funeral directors could sell caskets, so that was a protectionist statute. It was designed to protect the funeral home industry from competition, and that, of course, is absolutely arbitrary, and no rational basis for that. The tanning salon was arbitrarily cut out of operating during this period. Well, because of the COVID pandemic, and so... Well, if they could comply with CDC, I mean, presumably, the city required all the places that stayed open to comply with whatever the CDC guidelines were at that time, right? Yes. Six-foot distancing, masks, whatever, right? Well, except for the ones that were... I believe I'm correct, except for the ones that were considered essential businesses, essential businesses. Well, they still had to comply with the CDC rules. To the extent possible. Right. Well... They weren't limited to the 10-person limit, yes. Well, that's my point. So this tanning salon said we could operate if they were to say in the city council meeting, we can operate consistent with CDC guidelines. Just, you know, let us have a few customers in. Well, this is the point. The government has to make a decision based on an emergency situation. The pandemic is coming. We can't... We don't have time to and we may know this particular tanning salon may use extremely good hygienic methods, but we don't know that everyone does. Did following the science, did the CDC say the very small places with small capacity were more vulnerable, even though complying with CDC guidelines to transmit COVID? Is there anything like that in the record? I'm not aware of anything in the record. They are entitled to rational speculation, the cases say. They're not required to have empirical evidence to support their judgment. No doubt that is true, but rationality ought to take account of the reasons for which it is being these, this regulation is being promulgated, and it ought to also take account of the consequences for the people who suffer under it. And so they determined this is under the COVID situation is case of this. Obviously, the best way to prevent COVID, well, in the minds of many would be to shut everything down. But you can't, but they concluded. Well, actually, that didn't work either. But that was never on the table, right? So the rather than because that has its own set of harms. So in other words, what good does it do to prevent COVID? If you start to death because the grocery stores are closed, if there are food riots, because people can't get food, if you freeze to death, because utility companies are closed. What I'm thinking when I'm sort of reasoning back from is my experience in Texas, where the beauty salons were allowed to remain open. If they complied with quite rigid COVID guidelines, I don't see much difference between a tanning salon and a beauty salon. Well, the courts in California, the cases we cited did see a big difference there. Because of the length of time, well, actually, between the retail business and the length of time that a person's there. So in the tanning salon, the person's in there, they stay for a long time, they're in contact with all these services. Now, how do we know that the next person coming in? So if a person comes in who is infected, and they, at that time, we were thinking you could deposit it on surfaces, you can catch it from surfaces. Then the next person comes in, and they get it. And the longer you're in there, the longer you have to shed viruses, viral particles that the next person may get. Now, are you going off your memory? Are you going off what we have in the record before the City of Columbus promulgated its rule? Well, as we say, as the cases say, we're not limited to the record. We're limited to any conceivable basis that could have motivated or could have been a rationale for the thing. And so the difference is, as the governor of the state of Mississippi and Texas and Louisiana, I believe, it was essential versus nonessential. In other words, we have certain businesses that we, they provide such services that we will, rather than shut everything down, we will let them operate because the benefit to having them operate exceeds the risk of the COVID transmission. Now, so what is there? Let me go back to what you said. You made a reference earlier to people starving to death. Yes. In other words, that just is a point that the government's deemed grocery stores, food production as essential, more important. So those types of businesses. Those are essential to consumers of those stores so that they can buy food and not starve to death. That's correct. But why not look at the business owner? What if it were the case in this case? Pardon me, I don't remember the record of this case on this point. What if there was evidence that these business owners, small business, were going to starve to death during this period of COVID closure? Well, as. Would that prove the irrationality then of your regulation? No, because as the case. You just acknowledge that the right, the right not to starve to death is the basis for these distinctions. Well, I don't. This is that's a hypothetical situation. There was no evidence that that was going to happen. I am asking a hypothetical. I just admitted that I don't know what the record of this case holds on this. What if this record were undisputed that if this closure happens, the business owners will starve to death? It's not a fanciful hypothetical. I believe it happened around the country during the COVID period. People starve to death. People did not have food. They don't have the money because their businesses were shut down. That people went homeless. Food banks were very busy. I remember vividly the lines for people were starving. Again, the city council can't know these things in advance. They have to make the best judgment they can. Right. But you just acknowledged that the right to not starve to death is one of the bases that the government is drawing. It's not crazy to say, OK, you know, maybe there are businesses where the owners appear to be quite profitable and have a savings account that they can draw on. But there are other small businesses where they can't sustain how long this was, a few months closure. Well, those two people, they would suffer harm. But the thing is that a small number of people may suffer to protect the larger group from this COVID pandemic. And that's what they were operating on. In other words, it's a rational distinction to say that certain businesses are important and should be allowed to remain open because of the services and goods they provide that people need and people can't do without. So to keep a grocery store open, yes, they can't do without that. But goods and services that people could survive without, such as tattoos or dance lessons or artificial tans, those the government is justified to say that those do not provide enough benefit to the community. People can do without that. So we will close them to avoid the spread of the pandemic. We do not have a case about this impact of closure regulations in the Fifth Circuit, do we? I don't think the Fifth Circuit has taken that out. Yeah, well, I'm just saying, you know, we're still awfully close to the draconian measures that were taken in many aspects of the response to the COVID pandemic. And it seems to me it would be jurisprudentially risky for us to issue some broad pronouncement that says that a public entity can absolutely shut down some business for any purpose whatsoever, you know, because they in their infinite wisdom think they had to do it. And since we don't have a case on that sort, I am reluctant to participate in weighing the costs and benefits that way at this time. Right, and that's the point. The court is not in business of weighing the costs. No, but the court is not. Well, I guess that's right. But you're asking us to essentially, I don't care whether you call it arbitrary and capricious or what, saying essentially, well, this was okay. Well, it's closing for a temporary basis to allow vaccines, whatever, to, you know, once the vaccine's Well, if that were so, it would have been closed for 12 months, you know, nine months. So it didn't, you know, obviously This was seven weeks. I understand. If I could briefly address the takings issue, just to say, the Cedar Point case is not on point because it was an invasion case. And the Supreme Court has distinguished between the type of taking there and the type of use restriction here. In other words, you have fiscal invasions. Are you aware of any case that, so you heard, obviously, our exchange before about why is it the right to exclude somebody any different than the right to invite somebody to your property? Are you aware of any case that characterizes the right to invite somebody as a taking or not a taking interest? No, it's, well, it's the, yes, because it's the use of property, use restriction. I understand that's your theory. My question is different. My question is, do you have a case that talks specifically about the right to invite somebody to your property or not and characterizing that as either a use or as tantamount to Cedar Point? Or is this just a new question? I think it would be, it's the, any time there's a use restriction, that would implicate the right to invite someone on, into, onto your property if you can't use it personally. I might use my property and never want anybody on my property. But it is, the use restrictions are treated differently under Supreme Court precedent. I accept that. My question, I think you've answered it, is there is no case, this is a Res Nova first impression issue. I'm not aware of anything. We didn't look at that because that was not right. I don't think that was really raised as an issue. But the Cedar Point case, again, was an invasion case. The court said it conferred, the regulation there conferred a right to invade the grower's property and therefore was a per se physical taking. But the Tahoe Sierra case says that if it's not a physical taking, if it's just a regulatory restriction, use restriction case, then a temporary taking cannot be a taking per se. And since, so that's the issue. Since this was only temporary, it cannot be a taking per se. And that's the whole basis of the plaintiff's case. They put all their eggs into the per se taking basket and eschewed any reliance on. Isn't it kind of weird though that in the Cedar Point case, the government didn't completely take away your right to exclude, right? You can exclude a lot of people. You just can't exclude labor activists. And yet that was considered per se. Because it allowed any invasion. Any invasion against the owner's will is a per se taking. Whether it be with floodwaters, whether it be with people. No, I understand that. It's just for some reason, we privilege a modest, you could argue a modest limit on the right to exclude. We privilege that over a massive restriction on use. It just seems like a weird way to run the jurisprudence. I get that that's current law. It strikes me as odd. Thank you, sir. Okay, Mr. Wade. Your Honor, if counsel were to accept what the defense counsel is saying, that the mere rationality standard applies, I'd again ask the court to take a look at that petition for cert because it discusses the huge conflict in the courts about what that means, about what's rational and what's irrational. They're basically a dividing line between these cases. Those cases that say, like defense counsel says, it never meets the test. Everything can meet the rationality test. There is no such burden. It's kind of an imagination test. The lawyer can sit around in his office and anything that he could imagine that would make it rational is rational. To be fair, Mr. Wade, we have basically said that in the past. Well, Your Honor, one case that y'all said something different, and I think this is a case Your Honor was citing, was St. Joseph Abbey v. Castile, and it's cited in my letter there. Right. 712 F 3rd 215 at 223. And what the court said in that case is plaintiffs may negate a seemingly plausible basis for the law by introducing evidence of irrationality. And what we did in this case is to introduce evidence of irrationality. We had two expert doctors that said that this would be at least the most safe business. And we had the late testimony that one person at a time uses the tanning beds. So the petition lists the 5th circuit as being one of two circuits, at least two, I think I'm correct in saying two, that don't just rubber stamp with just anything goes type of imagination test. And instead, I suggest that the appropriate test should be whether this ordinance actually advances any significant state interest. Does it actually advance the goal of preventing the spread of COVID? And it doesn't. It does virtually nothing, if anything, because one person at a time tans. It's the safest business that you could have. And then when you compare that to the significant burden placed on the business owner, he's closed down entirely. So for that reason, it's irrational. Does it advance a state interest? And it burdens the business owner. So we hope the court, if you get to looking at the rationality test, we hope the court will find based on what Your Honor said in St. Joseph Abbey v. Castile that it's a real test, not just a whatever the lawyer can dream up imagination test. Okay. Okay. So Your Honor, unless the court has any further questions, that's all I have. Thank you. Thank you. Thank you. Thank you. That concludes our topic for the week. We will stand and recess.